UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
RICHARD P. JONES,                                           :
                                                            :
                              Plaintiff,                    :
                                                            :    04 Civ. 8421 (GEL)
              -v-                                           :
                                                            :    **OPINION AND ORDER**
JO ANNE B. BARNHART,                                        :
Commissioner of Social Security,                            :
                                                            :
                              Defendant.                    :
------------------------------------------------------------x

David MacRae Wagner, Freedman, Wagner, Tabakman & Weiss, New City, NY, for plaintiff.

Lorraine S. Novinski, Assistant United States Attorney, Southern District of New York (David N. Kelley, United States Attorney, on the brief), New York, NY, for defendant.

GERARD E. LYNCH, District Judge:

Plaintiff Richard P. Jones brings this action for review of the final decision of the Commissioner of Social Security ("the Commissioner"), who granted his application for disability benefits, but only as of April 3, 2003. Jones contends that the Commissioner erred in determining the date of onset of his disability. The Commissioner moves for affirmance of her decision; Jones cross-moves for reversal of the Commissioner's decision that he was not disabled before April 3, 2003, and a finding as a matter of law that he was in fact disabled from March 17, 2000. Unlike most appeals from denials of disability benefits, this appeal concerns not the proper evaluation of the medical evidence, but rather the resolution of a simple legal issue. For the following reasons, the Commissioner's motion will be granted, and Jones's motion will be denied.

## BACKGROUND

On or about March 17, 2000, Jones was employed as a heavy equipment operator, work he had done for 32 years without complaint.[1] On that date, however, he injured his back in a fall at work (Pl. Mem. at 1-2; Def. Mem. at 2; R.31-32, 143, 163-64), and never returned. On May 4, 2000, Jones commenced treatment with Dr. Mark Medici, complaining of pain in his leg and lower back. Upon examination Dr. Medici certified that Jones was unable to "perform his duties at work" due to his back condition, and recommended stretching exercises and anti-inflammatory medication. (R.159.) The following week, after an MRI exam, and again on May 25, Dr. Medici confirmed that Jones was "unable to return to his present job," ultimately prescribing pain relief medication. (R.157-58.)

For the next several years, Jones continued in treatment with Dr. Medici and others. In June 2000, Dr. Medici believed that Jones "would be able to return to work," albeit with restrictions of "no lifting, no walking or standing for long periods of time, no driving of trucks." (R.156.) Jones apparently did not return to work, however, and in July, as he complained of continued back pain, Dr. Medici stated that Jones was "unable to return to his present job due to his inability to lift, walk or stand for long periods of time." (R.155.) In August and again in October, Dr. Medici again cleared Jones to return to work, but consistent with his views throughout this period, opined that Jones was "unable to lift, drive trucks, [or] stand for long

---

[1] Although Jones states in his memorandum of law (Pl. Mem. at 3), and testified at the ALJ hearing (R.31), that he worked as a heavy equipment operator for approximately 32 years, the Court notes that based on his stated date of birth of June 29, 1953 (R.69), this would mean that Jones began his employment at the age of 15.

2

periods of time." (R.153-54.)[2]

In May 2001, Jones visited Dr. Matthew Skolnick, an orthopedic surgeon. Diagnosing low back strain and pre-existing lumbar degenerative disease, Dr. Skolnick opined that Jones could return to his work. (Tr.170.) Like Dr. Medici, Dr. Skolnick suggested limitations on Jones's activities (specifically, that he not lift more than 50 pounds or do repetitive bending (id.)), but he noted that it was difficult to substantiate significant restrictions because of "a significant degree of symptom magnification" on Jones's part. (R.169-70.)

Apparently dissatisfied with Dr. Skolnick's view, Jones returned to Dr. Medici in June, July, August, and October of 2001. Noting the same sorts of symptoms that had existed before, Dr. Medici concluded that Jones could not return to his habitual employment due to inability to lift, stand for long periods, or drive a truck. (R.147-50.)[3] In November 2001, a neurologist, Dr. Jeffrey S. Oppenheim, found a variety of relatively minor abnormalities, recommended against surgery, and considered Jones a good candidate for a pain management program. (R.144.)[4] Jones apparently did not undertake such a program, and in January 2002 Dr. Medici repeated that recommendation and prescribed physical therapy. (R.145.)

---

[2] Other than a visit in November (R.152), and a visit in January 2001 occasioned by a fall and a cracked rib (R.151), Jones did not return to Dr. Medici until June of 2001. (R.150.) Dr. Medici made no statement as to Jones's ability to work during the November 2000 and January 2001 visits.

[3] In August 2001, Dr. Medici referred Jones for a MRI, which was conducted by Dr. Irwin E. Librot. Dr. Librot identified certain minor abnormalities. (R.138.)

[4] The ALJ identifies Dr. Oppenheim as "Dr. Spitzer," presumably because "Daniel E. Spitzer, M.D." appears at the top of the letterhead for the practice with which Dr. Oppenheim is associated. (R.15, 143.)

3

Jones consulted another orthopedic surgeon, Dr. Eduardo Alvarez, in April 2002. Like the other doctors who had examined him, Dr. Alvarez found Jones unable to return to his regular job. However, Dr. Alvarez specifically found that Jones could perform full time work in a sedentary capacity, with a limit of lifting ten pounds. (R.166.)

Jones applied for disability benefits on April 8, 2002. In connection with his application, he was examined by a consultative examiner, Dr. Thomas King, in June 2002. Dr. King opined that Jones had no limitation in sitting for moderate periods, but was severely limited in lifting, carrying, pushing or pulling heavy objects. (R.176.) A state agency physician, upon review of Jones's medical records in July 2002, was of the opinion that in an eight-hour workday Jones could lift twenty pounds, and stand, walk or sit for six hours, but could bend only occasionally. (R.181; Def. Mem. at 10.) Another consultative examiner, Dr. Steven Weinstein, after a full physical examination in July 2002, found that Jones's abilities to sit, stand, walk, push, pull, carry and lift were moderately restricted. (R.185.)

The only other medical reports in the record date from March and April 2003. In March, Dr. Medici noted that Jones still had not attended the recommended pain management program and that Jones could not return to his job. (R.197) In April, Dr. Medici provided a more specific evaluation, opining that Jones could occasionally lift less than ten pounds; could stand or walk for less than two hours, and sit for less than six, in an eight-hour workday; was limited in his ability to push or pull; and could never climb, kneel, crouch or crawl. (R.198-200.)

Considering all this medical evidence, the Administrative Law Judge ("ALJ") ruled that at least up until April 3, 2003, Jones was not disabled, because he was able to perform sedentary work, and a significant number jobs in the national economy fit that description. However, as Jones was about to turn 50 years old, the ALJ concluded that as of April 3, 2003, he was disabled

4

within the meaning of the Social Security Act, because his physical limitation to sedentary work, combined with the non-medical factors of his age, educational level, and work experience, meant that there would no longer be jobs available to him. Accordingly, the ALJ found that Jones was disabled, and entitled to Social Security disability benefits, as of April 3, 2003. (R.18-19.)

## DISCUSSION

I. Legal Standards

A. Determining Disability

In order for a claimant to be deemed disabled, he must demonstrate his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, the impairment must be:

> of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The Commissioner is required to apply a five-step procedure in evaluating disability claims. 20 C.F.R. § 416.920. As the Second Circuit has explained:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an

5

> impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)).[5] The disability claimant bears the burden of persuasion at the first four steps. Once the claimant's burden is satisfied, the burden of persuasion shifts to the Commissioner at the fifth step (i.e., to establish that the claimant is able to perform work that exists in the national economy). Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).

B.  Standard of Review

In reviewing the decision of the Commissioner, a district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). It is not the district court's "function to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks and emphasis omitted). A district court may "set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). In the Social Security context, "substantial evidence" has been defined as "more than a mere scintilla . . . [,] mean[ing]

---

[5] Appendix 1, cited by the Second Circuit in Rosa, 168 F.3d at 77, appears in 20 C.F.R. Part 404, Subpart P, and is incorporated by reference into Part 416 in 20 C.F.R. § 416.925.

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). This standard applies not only to the Commissioner's findings of fact, but also to her inferences and conclusions." Toribio v. Barnhart, No. 02 Civ. 4929 (GEL), 2003 WL 21415329, at *2 (S.D.N.Y. Jun. 18, 2003). Thus, the Commissioner's findings, and the inferences and conclusions based on those findings, where supported by substantial evidence, must be affirmed even if this Court's analysis of the evidence may differ. See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991) ("[T]he court may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review"); see also DeChirico v. Callahan, 134 F.3d 1177, 1182-83 (2d. Cir. 1998) (affirming where substantial evidence both in favor of and against Commissioner's decision).

II.     Application

While Jones challenges the ALJ's ultimate decision that he was not disabled prior to April 3, 2003, he does not contend that any that the ALJ's underlying findings, inferences, or conclusions are unsupported by substantial evidence. For instance, he does not dispute the ALJ's findings at step one that Jones was not performing gainful activity at the time of his application, at step two that he had a severe impairment, at step three that his impairment did not meet or equal the criteria listed in the regulations, and at step four that he was unable to perform his past relevant work as a motor equipment operator. Nor does Jones challenge the ALJ's finding at step five that he was capable of sedentary work, and that prior to April 3, 2003 there were ample jobs in the economy for someone who could perform sedentary work and had Jones's relevant non-medical characteristics. (R.18.) Normally, this would compel affirmance of the Commissioner's decision.

7

Jones argues, however, that the decision must nevertheless be reversed because of an error of law. Noting that the ultimate determination of the ALJ was that Jones was indeed disabled at least as of April 3, 2003, Jones argues that under Social Security Ruling ("SSR") 83-20, 1983 WL 31249 (S.S.A. 1983) ("Titles II and XVI: Onset of Disability"), where the disability is of traumatic origin, the date of onset of disability is fixed, as a matter of law, as the date of that trauma. Because SSRs are binding on all components of the Social Security Administration, see Heckler v. Edwards, 465 U.S. 870, 873 n. 3 (1984), Jones contends that once it was determined that Jones had become disabled as an apparent result of the injury he sustained in March 17, 2000, his date of onset of disability should have been fixed as March 17, 2000, and not April 3, 2003.[6]

If Jones's interpretation of SSR 83-20 were correct, it would lead to a perverse result in this case. Jones does not challenge the ALJ's finding that after his injury of March 17, 2000, he retained the capacity to do sedentary work. And indeed, the evaluation of every physician who examined Jones is consistent with the view that while he may have been physically unable to return to his prior work as a heavy machine operator, he could perform at the very least jobs of a sedentary nature, which, Jones does not dispute, were available to him prior to April 3, 2003. While the ALJ subsequently found that as of April 3, 2003, Jones had reached an age where such jobs were no longer available to a person of his education and experience, it makes no sense to find that this change in circumstance retrospectively rendered Jones disabled for the three

---

[6] Because the ALJ did not address the question of whether Jones's limitations stem from the alleged March 2000 incident, and the record contains some reference to other potential causes, such as a pre-existing lumbar degenerative disease, if Jones's legal position is correct the remedy would be vacatur and remand to the Commissioner to determine whether Jones's disability stemmed from a particular trauma, and, if it did, to fix the date of that trauma. For present purposes, the Court assumes arguendo that Jones's difficulties stem from the March 17, 2000 accident.

8

preceding years, during which he indisputably *could* have worked.[7] That Jones's injury in 2000 produced a condition that would eventually disable him in 2003 due to an absence of jobs he could perform as of that date should not entitle him to benefits for a period during which his condition did not prevent him from working at jobs that were then available to him.

Jones's argument thus can be accepted only if the language of the cited SSR requires such a result. It does not. SSR 83-20 deals with establishing the onset of disability. Different portions of the SSR address special problems in establishing the onset date in different situations. Jones relies on a provision entitled "Onset in Disabilities of Traumatic Origin," which states:

> For disabilities of traumatic origin, onset is the day of the injury if the individual is thereafter expected to die as a result or is expected to be unable to engage in substantial gainful activity . . . for a continuous period of at least twelve months.

SSR 83-20, 1983 WL 31249, at *2. Jones argues that because his injury resulted from a trauma – the March 17, 2000, slip-and-fall at work – and because that injury *eventually* produced a disability on April 3, 2003, the disability that he suffered should be backdated to the date that he was injured.

Determining the date of onset of disability is not an exact science, and when an individual is found to be disabled at the time of his application, or at the time of a hearing, it is often necessary to infer when that disability began; that a person is unable to work when examined by a doctor today does not necessarily imply that he was unable to work yesterday. But SSR 83-20 establishes a sensible rule: if the disability that exists today is traceable to an accidental injury

---

[7] Arguably, the same would be true if the ALJ had concluded that Jones's physical condition worsened in April 2003 (as might have been the case, in light of Dr. Medicci's more negative evaluation of April 30). The Court need not address that situation, however, since Jones became disabled, even without any change in his condition, once the sedentary work that he could do became unavailable to him.

9

suffered last week, the law presumes that the disability began from the day of the trauma, and benefits are awarded accordingly – at least where the disability appears to be serious and not transient, that is, when the individual is expected to die or to be unable to work for twelve continuous months. Under such circumstances, there is little point in trying to be more precise in establishing whether the debilitating effect of the injury was slow or fast to develop. As one district court cited by Jones put it, "When the impairment is of traumatic origin, the date of onset is self-evident." Mason v. Apfel, 2 F. Supp. 2d 142, 146 (D. Mass. 1998).

But this rule does not address a case like Jones's where the claimant was *not* so severely injured that at the time of the injury he could be expected "to die . . . or . . . to be unable to engage in substantial gainful activity . . . for a continuous period of at least 12 months." As discussed above, Jones does not dispute the ALJ's (well-supported) finding, based on the medical evidence, that subsequent to his accident he *could* engage in productive work of a sedentary nature. That is, Jones did not suffer a sudden, traumatic disability, but rather an injury that impaired his ability to work but did *not* render him disabled, until he reached an age where the kind of work he was physically able to do was no longer available to a person with his experience, education, and skills. Under the circumstances of this case, the date of onset was distinctly not the date of the fall, but rather the date at which Jones's age, experience, education, and skills rendered him unfit for jobs which he could otherwise perform in light of the diminished work capacity caused by the injury he sustained as a result of that fall. The disability found by the ALJ to have taken effect on April 3, 2003, was thus not subject to the rule for disabilities of traumatic origin described in SSR 83-20. See, e.g., Credle v. Apfel, 4 Fed. Appx. 20, 23 (2d Cir. 2001) (unpublished) (holding SSR 83-20 rule inapplicable where medical evidence reflected that claimant could work shortly after traumatic injury, although deterioration due to injury ultimately rendered claimant disabled).

This holding – that the date of onset should not be "backdated" to the date of injury where that injury only renders the claimant disabled at some later date – is consistent with the overarching policy statement of SSR 83-20, which the provision for traumatic disabilities is designed to implement:

> The onset date of disability is *the first day an individual is disabled as defined in the Act and the regulations*. Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or *the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence.*

SSR 83-20 at *1 (emphasis added). This policy, fundamentally rooted in the underlying purpose of Social Security Disability Insurance, instructs that a claimant is not disabled, and should not be paid benefits, until and unless he is "disabled as defined in the Act and the regulations," which in this case is April 3, 2003, and not the date of Jones's fall at work three years earlier. Moreover, while a number of factors can be taken into account to determine the sometimes cloudy question of the moment that the disability began, primacy is given to the "severity of the [disabling] condition(s) shown by the medical evidence." In this case, the medical evidence provides no support for pinning the date of onset to the date of Jones's injury (or indeed any date earlier than April 3, 2003).

The cases cited by plaintiff do not dictate a contrary result. Mason v. Apfel, cited above, and Martin v. Shalala, 927 F. Supp. 536 (D.N.H. 1995), deal with different and more complex rules that apply in determining the onset of mental impairments, and mention the rule for disabilities of traumatic origin only in dictum (and in passing), providing no analysis as to the applicability of that rule to any particular situation. Key v. Callahan, 109 F.3d 270 (6th Cir.

1997), another case of mental impairment, actually supports the Commissioner's position, in that it holds that determining the date of onset pursuant to SSR 83-20 is unnecessary if a claimant has been found to be not disabled, and here, Jones was found to be not disabled prior to April 3, 2003, due to his ability to perform sedentary work and the availability in the national economy of such work based on his age and other non-medical characteristics. Id. at 274. Neither party cites any case, and the Court has found none, where SSR 83-20 has been applied in the manner suggested by Jones, to require the award of benefits to a person during a period in which it has been found that his physical injury did not result in disability, because he was later found disabled due to a change in the *non-medical* conditions determining the availability to the applicant of work that he is physically able to perform.

## CONCLUSION

The ALJ's decision was supported by substantial evidence in the record and was not infected by an error of law. The ALJ's decision must therefore be affirmed. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and Jones's cross-motion is denied.

SO ORDERED.

Dated: New York, New York
February 21, 2005

_____
GERARD E. LYNCH
United States District Judge